Mr. Crittenden raises two issues on appeal. One has to do with jury instructions and the other pertains to a conflict of interest. And I'd like to start by talking about the jury instruction issue. Specifically, defense counsel requested a lesser included instruction regarding simple possession. And I would remind the court that although there were three counts in the indictment, there's only one count of conviction that remains, which is count two, a possession with intent to distribute. In this regard, Judge Briones denied the lesser included, but he stated on the record that he was doing so because he believed that it was not a lesser included. The parties referred to a case that is not cited, but really both parties on appeal agree that they were talking about a case out of this court, United States v. Ambrise. That case said that simple possession is not a lesser included of distribution, but actually that case, a footnote said, it is a lesser included of possession with intent to distribute. So at this point in the appeal, both parties agreed that Judge Briones was incorrect in his assessment that simple possession was not a lesser included of the offenses charged. Then the next question is, could a rational jury have acquitted of the charged offenses and convicted only of the lesser included offense? And generally speaking, when a judge makes a decision based on what is clearly a misunderstanding of the law, that's something that might give rise to an abuse of discretion. But in this case, you could also look at what Judge Briones said in the record. He said, I have a problem with the intent to distribute. He said that on the record because it occurred to him. That's probably would have given that lesser included instruction if he believed he was lawfully entitled to give that lesser included instruction. Additionally, as this court knows, Judge Briones ended up granting a motion for new trial in this case, finding that the evidence weighed heavily against the verdict. And I know the courts look at the procedural history. We've been up. There were a couple of panel decisions. We argued this on Bonk, on Ms. Berenger and I were here just about two years ago exactly, arguing this case on the government's appeal. So I would suggest to the court that although ultimately Judge Briones was overruled on that, the initial, the original panel, Judge Elrod, and then in her dissent to the on Bonk decision, I believe she was joined by Judge Dennis, found that they would have affirmed Judge Briones' grant. So I think the idea that a rational jury could have found the lesser included, could have convicted only if that lesser included, I think is extraordinarily well supported by the record in this case. When we looked at the issues on that appeal, weighing the evidence in that context, we had to evaluate the evidence in the light most favorable to the verdict. So that's why this is a completely different analysis at this point in time. Weighing the evidence in the light most favorable to the verdict, we had to give credit, for instance, to the co-defendant, Mr. Crittenden's wife's testimony, who had a very silly story, but among other things, apparently surprising defense counsel. She blamed Mr. Crittenden, said he's the one that put things in a bag. And I'll get back to that, perhaps, on the conflict of interest issue. But in any event, the analysis last time was light most favorable to the verdict. At this time, and I'm just going to quote briefly a case we cited in our brief, United States versus Lucien, which said, we have no doubt that the evidence at trial was sufficient to convict Lucien of possession with intent to distribute cocaine, cocaine base. But when the issue is the propriety of a lesser included defense instruction, the test is whether a reasonable jury could nonetheless find the defendant guilty of only simple possession. So it kind of flips the test around. It is not, is there sufficient evidence? Is there, is a, could a rational jury have convicted of only the simple possession? And as I said, I think the record is unusually strong in that regard. Because of Judge Briones is reminding the court, Judge Briones, who sat for about 30 years and presided over a lot of these kinds of cases, that he felt there was a problem with the weight of the evidence and specifically mentioned the intent to distribute aspect of it. I also would just like to go back to quote, I put it in, I think our reply brief, one of my favorite quotes from this court that I think it's from Judge Higginbotham. When he said that the jury is the ultimate discipline to a silly argument. And that was a case, Burton, it didn't have to do with the lesser included, but it had to do with the jury instruction, the defense instruction that was denied. And what he was saying is that if there's some evidence that supports the instruction, the jury ought to get it. It's up to them. And so for that reason, we think that is, that is grounds for reversal of the conflict of interest. Really, there was a Garcia hearing in this case. But I want to just talk for a moment about the importance of the colloquy with the court. Because generally speaking, generally speaking, a court can assume that defense counsel is speaking for the client. The court can presume that they've had those conversations. And generally speaking, the court isn't going to question. If I say my client wants to do this, generally speaking, the court is, sorry, the court is not in a position to ask, are you sure? Are you sure you've talked to your client about this? There are some exceptions to this rule. And this is one of those exceptions when it has to do with a conflict of interest. Because the attorney might not be speaking for the client. And that's why Garcia says the best practice is for the court to have a colloquy with the defendant. I would say particularly in a case like this, and this is in the record, that Mr. Morales, which is trial counsel, he was hired to represent Mr. Crittenden. He was hired to represent a related defendant that was indicted separately, but was certainly part of this same conspiracy, really. When someone is hired to represent more than one person, I think that sort of, there's a presumption of some kind of conflict the attorney is under. Because if he has to withdraw from one or both, it's going to be money coming out of his pocket. And just think that's something the court can take into account when analyzing whether defense counsel is capable of speaking for the defendant. That's why often it's good for the defendant to have advice of an outside attorney. With respect to this case, I just want to have the court note the timeline. The government filed its notice of conflict on Sunday, May the 6th of 2018. There was a hearing on Wednesday, the 9th. Trial started the following Monday. So, and I also would mention to the court, this is not the case where Mr. Crittenden would have had any notice of this conflict, because the person, the other person Mr. Morales represented was not somebody that Mr. Crittenden ever dealt with. The import of the other person is that he had dealt with Carla Dominguez, Mr. Crittenden's wife, who was a co-defendant in our case. So the importance of all of this is the other client couldn't testify against Mr. Crittenden or for Mr. Crittenden. And I believe that's why Mr. Morales thought there was no conflict. But what the prosecutor realized as he was getting ready for trial, he realized, well another client could be used to impeach Carla Dominguez. Now Mr. Morales said at the conflict hearing, that's not part of our defense. But then guess what happens at trial? Ms. Dominguez takes the stand and she implicates Mr. Crittenden. Mr. Morales was clearly surprised by this and in cross-examination he even said, please tell the truth. He clearly didn't think she was telling the truth. He was clearly surprised by that. And specifically what testimony on talking about is when she testified that Mr. Crittenden is the one that put packages in a bag that was later transported to her. And she had a very silly story. She said somebody asked me to pick up a car. I didn't know what was in it. Somebody later said, would you take the bags out of the car? She was, she was trying to testify to get herself off the hook. I think Mr. Morales was surprised by that. But that is the problem with potential conflicts is that when there is a potential conflict, a court needs to imagine what might come up and we need to be sure that we don't have a mid-trial problem. The prosecutor was the only one that really understood this. So when I'm talking about the importance of a colloquy, there was a colloquy in this case. But what we said on the brief is the timing of the colloquy. The district court asked Mr. Crittenden, you understand Mr. Morales represents this other person. Do you have a problem with that? And Mr. Crittenden says, no sir, no sir, no sir. I think that's all he says is no sir, like seven times. After that, the prosecutor says, your honor, this is why we think there's a conflict. Then the pro, because Mr. Morales is saying, no, there's no relationship. There's no relationship at all between Ms. Dominguez and my other client. I'm not sure he meant that. I'm sorry? I'm not sure he meant what you say he meant when he said there's no relationship. I read that. Yes. I thought he was saying there's no relationship between Mr. Crittenden and Mr. uh, the other guy. He, he did say that when he did say that, but first he said that there was no, um, I'll have to double check my, the words on this, but I believe first he said there's no overlap at all, even with Ms. Dominguez. Then when the prosecutor said, well, actually, um, she delivered methamphetamine to him. Then he said, well, but it doesn't, it doesn't impact Mr. Crittenden and that's not going to be part of our defense. Well, even, even if the Garcia hearing was insufficient, say we spot you that, you're not arguing that Crittenden's written, signed, express waiver was invalid, are you? I thought you might ask that. Um, because that, that, that was filled out, that was filed after the hearing. Um, and I know the government suggests, I know they cite one case, RICO is a case where, um, there really wasn't a Garcia hearing at all, but there was a written waiver filed and, and this court said, you know, where there's a good waiver, you don't even have to have the colloquy. Um, and, and I would say, I mean the written waiver does, it, I can't say that it's not, it doesn't matter, Your Honor. I would say this, one of the things about the written waiver, the language in it, is that it, Mr. Crittenden is waiving all conflicts, potential conflicts, future and past. And so there have to be some limits on that. I mean, I, I, I think that that could not possibly be valid if there was some other conflict that Mr. Crittenden didn't know about yet. And, and I kind of want to get back to the fact of why the colloquy is important for the same reason when I started saying that your defense counsel's relationship with the client is so important because, for instance, I have a client that pleads to, he's pleading to an information. He's giving up his right to indictment and I have a waiver of indictment for him to sign. That's a complicated concept, honestly. That's a very complicated concept. It's one that a court normally wouldn't delve into very deeply if I have my client sign it because we all know it's for the best. He's, he's pleading to a lesser offense. It's all great. He doesn't really need to know all the ins and outs of why there's a six minute right to grand jury indictment. But in a case like this, a written, I'm just making the point, a written waiver is something that's signed apart from a colloquy. And I think in some circumstances, and I think this is one of them, you have to have that colloquy in the courtroom. And I would just say this about RICO where the RICO case where they said it was okay that there wasn't that. That was a case where it was a husband and wife being represented by the same attorney. And although there was not a colloquy, there was not the give and take, the magistrate judge spoke to the defendant at length at the very outset of the case. You know there's problems when you represent, when one attorney represents the both of you and had a lengthy discussion and it was the beginning of the case. And this is one of the reasons I'm pointing out to you. This was raised to Mr. Crittenden. He was in custody, so he probably didn't know anything about it on the Sunday, but in any case, this fact situation is brought to his attention. I just think it's, in cases like this, the court needs to delve a little deeper and get better responses from the defendant, Your Honor. And I do think that it came out, the exact problem that the U.S. attorney anticipated did arise in this case. And Mr. Morales could have impeached Mr. Mingus and said, oh really? You didn't know anything about this? Well, what about the fact that you delivered cocaine to this other client? What about that? He could have done that, but he didn't. And I'll go ahead and pass my time at this point. Thank you very much. Ms. Berenger, welcome. Thank you. May it please the Court, Elizabeth Berenger for the United States. I'll also first start out with the jury instruction issue. The evidence didn't support the giving of the instruction in this case. And if this was a case where the facts were that Crittenton just took the stuff to the attic and left it there because he wanted it out of his house, he would have a much better argument in this case. That would probably support the giving of the lesser included instruction of possession. That's not what we have in this case. We have evidence that he was the only one who knew where the drugs were and had access to them. This is all uncontroverted testimony, that he drove over to the byway house and retrieved it from the byway house to give to Dominguez on the way to her selling to the informant and picking out exactly the 10 bundles of methamphetamine from the commingled stash. So once we have him going to a place where only he has access, putting it in the distribution stream, if the jury found that he possessed it at the byway house, it had to also find that he was in the distribution stream. And a lot of this whole, he was a reluctant person, he didn't want to do it, he wanted it out of the house, that kind of goes to motive and not intent. So his motive and his reason for doing that is very different from what his intent and sort of the mental fortitude and what the mental state for the crime was. For those reasons, the jury couldn't, if it found that he possessed it, it couldn't find that he wasn't part of that distribution stream. And just the uncontroverted testimony for that is Crittenden admitted that he handed the bag to Dominguez, that was on 736 to 737, the agent saw him come out of the house, they saw a black man with his car after watching him go to the house, that's at 567 and 590, and then Dominguez also testified about him handing her the bag and he was the only one who knew where it was. And then we also have that friend that gave him access to the attic saying that he had stored some stuff there. So all of that, that was what was in front of the jury is him putting that into the stream of distribution. And I do want to correct one thing is that we agree that Ambrose doesn't support that it's not a lesser included instruction, but there's also some ambiguity in the record as far as what happened and what the judge's finding was. We do have, obviously something happened off the record because the government gave cases to the court that we don't know what they are, they're not in the record, we don't know what was said at that point to object to the instruction. So it's clear that when they asked for the lesser included instruction, Morales asked for it for all three charges. So possession is in a lesser included instruction of the two conspiracy charges. So that was correct. So I'm not sure exactly what the court's finding, but of course this court can affirm for any reason supported by the record. And what is supported by the record is that the instruction wasn't proper. So I'm going to move on to the conflict unless there's any questions about the lesser included offense. So as far as the actual conflict, just a few things I wanted to point out is the timeline of it is when the government notified the court about what the conflict was, we weren't sure exactly what defense or certain what defense was going to be raised at trial. We weren't sure if they were going to be antagonistic or if they were going to be beneficial. And as the government set forth in its motion, it had a conversation with Mr. Morales and decided, hey, I think he's going to raise, it's going to be a beneficial defense and this is not going to be a conflict. And that was the defense strategy for whatever reason is that they were going to support one another and present this united front. And that strategy never changed at trial. And how do we know this? Morales never went after Dominguez on cross about the implausibility of her story. He never talked about in his closing argument that she was to blame. And there was evidence in the record where if he wanted to go after her, he could have. I mean, as defense counsel noted, her story was a bit implausible. It was a little not put together, but he didn't really go after her on cross-examination about that. But importantly, during closing argument, even though he could have brought up that she was a much bigger dealer than she'd said based on that prior interaction, he never brought it up. And he could have. There was two recordings where she talked about it. It was both in 21C and 22A where she mentioned this prior drug deal and he could have done it based on her cross-examination. She admitted on both direct and during the government's cross-examination that she'd given the gift bag to somebody else. Part of that Juan Diaz stash had handed it off. So all of that evidence was in the record if that was the defense strategy. So that just proves that it wasn't the conflict that led him. It was the defense strategy and their strategy was united from the beginning until the closing argument never wavered as far as what that strategy was. So that just supports the government's argument that there was no conflict in this case. It wasn't because of that defense strategy and their chosen strategy. It wasn't in Crittenton's interest for Domingos to be impeached. And that's shown by Morales not impeaching her, but why Amaro's testimony wouldn't have helped. If she was a much bigger dealer than she said, that would have hurt him and not help him because their defense was that this was a one-time deal and they weren't really sure what was happening. So her being a bigger dealer would have only hurt her and was aware of her comings and goings. So that wouldn't have helped him. And then again, there was this other evidence in the record that he could have used to impeach her if he wanted to. When it comes to approving Crittenton's intent to distribute, is the government relying on this recorded Domingos phone call or is there enough other evidence in the record to support that? Yes. So it wasn't just the recording where she said, I work with my husband. It was also his confession that he knew that he had handed her the bag, that he thought there were drugs in the bag. It was her testimony and her admissions on cross-examination from the government about that kind of evidence. And it was the timing, the timing of him going over to the house right before everyone sees him going to her house, he admitted going to the house, from that commingled stash of drugs, selecting 10 from about 103 bundles. He picks out 10 that were meth, puts them in a bag, hands it to her. And so the only evidence wasn't just from either her recordings or her cross-examination. So it was also from the other evidence in the record. Counsel, in your view, is the Garcia hearing in this case adequate? I think it was more than adequate. And here's why. We not only have the government's motion, but we have the court addressing those three factors. Is he aware of a conflict that was clearly gone over by the court? Understands his right to conflict-free counsel that was knows the potential consequences and pitfalls of that continued representation. And the government gave a detailed explanation of what those pitfalls were on 414 and 415 of the record. It says, hey, I don't know what the defense is going to be, but if he goes after her and is different from her and they're not united, this is what the problem is. And then that was on May 9th. And on May 10th, he signs a written waiver. And I just want to note that this is a sophisticated defendant. Mr. Crittenden has been through the criminal justice system. He has a prior drug conviction, a prior methamphetamine trafficking conviction. He attended Baylor. He got a degree from the University of Texas at Austin. That's all in the pre-sentence report. He's not an unsophisticated person that can't understand that type of hearing where the judge and the prosecutor and his attorney are all working together. It's also clear that defense counsel, we're entitled to rely on defense counsel's assertions of what he has explained to the defendant and his assessment of the conflict that's from the Holloway case, that we're not assuming bad faith from defense counsel. I mean, if there's some sort of issue of bad faith, that's in 2255. We're just looking at the court's report of the waiver at this point. And if there's some sort of problem where Mr. Crittenden feels that he didn't get effective assistance of counsel, he would need to develop the record at that point in 2255. And I would also like to say that, I mean, this plausible defense strategy that was selected by the defense to be united, we're just assuming that if he went after Dominguez, she wouldn't also go after him. But this might have been something that they selected because she also had dirt on him too. So this isn't, I mean, she provided very exculpatory testimony for him about his lack of knowledge of Juan Diaz, his lack of knowledge of the source, his lack of involvement. So we don't know what would have happened if he would have gone after her and impeached her. So if there are any other questions from the court, I would cede the rest of my time and ask the court to affirm the conviction. Okay, Ms. Berenger, thank you very much. With respect to the instruction issue first, the evidence of intent to distribute, I just have to stop doing that, I want to go back to this, the idea that he picked out the bundles to take to her. Nobody says that except her, okay? He didn't say that, he never said he sorted bundles, he never said he put anything in any bag. He did admit, the agent only saw a black man come out of the house, but Mr. Crittenden said, yes, I got a bag out of the house and I took it to my wife. There wasn't evidence about the number of bags in the house? I think there were several bags, I don't remember exactly how many, but there were several. The thing that Ms. Dominguez testified about that was so damning was that she said she didn't know how, she said that some of the drugs came to her house in a plastic bin and she said, I don't know how they got in suitcases or bags. He must have done it. And that's what was so damning to him. She's the only one that said that. He didn't say that, although he said plenty of things, I mean, he admitted everything that he did, but he never said that. I would disagree that Ms. Dominguez said anything exculpatory. Yes, she said he didn't know this guy, but nobody else thought he knew the other guy. He wasn't on any recording. He wasn't at any meetings. He didn't have any history with these people. So the fact that she said he didn't do this and that wasn't really exculpatory because then she threw in the inculpatory part. In any event, I think with respect to the instructions, you have to imagine that the jury might have, well, we know they discounted Ms. Dominguez's testimony because they convicted her also. So we have to, but we certainly have to imagine that the jury was free to discount her testimony. As I said, you know, on our prior appeal, we had to look at the evidence in light most favorable to the government. The jury didn't have to look at it that way. They might have discounted her testimony and they might have said, this poor guy, which I think is kind of what Judge Brionis said, he was just trying to get this bag out of the house because his wife was doing this bad thing and there were kids in the house and he just got the bag out of there. And the jury might have thought the same thing that Judge Brionis thought, which is all this man did at worst was possess that bag. He had no intent to distribute anything and they were entitled to make that finding and they could have lawfully done so. The case in mind from our court or any other court that is really on point here with respect to the lesser included offense? I really just, the one that I quoted, Lucian, which talked about the standards. I mean, I don't know that there's factually anything exactly on point, but Lucian is the case that said, yeah, there's enough evidence to have convicted him of that which would, you know, the jury was entitled to find otherwise. So it's a different standard. So that Lucian case, and it is cited in our brief. With respect to the conflict of interest, just briefly, I mean, honestly, it's hard to say what defense counsel strategy was. I mean, honestly, but that's why a conflict can be a problem. I mean, defense counsel may want to gamble and say, I don't think I'm going to go there, but the defendant shouldn't be stuck with that decision. And I think that's what I do think, again, just to say one more time, the timing of it is important because when the prosecutor who is doing his best, and actually, Judge, just on the language, because you asked me about the language that Mr. Morales used, I did find it. He initially says, it's a very tangential link between him, meaning his other client, Amato, and co-defendant Ms. Dominguez. And then he said, and this is a quote, it's in my brief at page five and in the record at page 412, he described Ms. Dominguez and his client Amato as having, this is the quote, as not having, quote, any relationship whatsoever. That's what he first says. They have no relationship whatsoever. She delivered methamphetamine to him. That's what I would call a relationship when you're talking about a drug conspiracy. But that's what he said first. So how could he have possibly explained this to the client correctly when he's not even, it's not making any sense. It just didn't make any sense. He was willing to gamble. This is our defense, but it didn't work out that way. And Mr. Crittenden is the one that's stuck with the consequences. So for that reason, I think in this case under these facts, the Garcia hearing was not sufficient. And if I have no questions, I think my time is about up. Okay. Thank you. Thank you, Ms. Dillinger. The Court is aware that you are court-appointed, correct? Yes, that's correct. Well, thank you for taking this on. We're grateful to you, Mr. Crittenden, as well, for representing. Thank you. Thank you so much. The case is submitted. Thank you both.